R. E. STAFFORD AND ANOTHER *v.* THE STATE.

BAIL BOND.— One W., who was confined in the G. county jail, under a *mittimus* from the District Court of C. county, was allowed bail and gave the required bond with sureties approved by the sheriff of G. county, who accepted the bond and sent it to the clerk of said court, as directed by the order allowing the bail. Meanwhile the said sheriff had received a *capias* from the District Court of B. county for the arrest of W. to answer a different charge there pending, and without setting W. at large, arrested and detained him by virtue of the *capias* until the sheriff of B. county conveyed him to the jail of that county, and he subsequently escaped therefrom. At the next term of the District Court of L. county, to which the venue had been changed, W. failed to appear, and judgment *nisi* was entered against him and his sureties on the bond; and in defense to the *scire facias*, the sureties pleaded that the bond had never become operative or binding, because their principal had not been set at liberty or placed in their custody, but was continuously detained by the State until he made his escape. But *held*, that the plea sets up no defense. Inasmuch as the bail bond took effect from its delivery and acceptance, and W. was not thereafter detained by virtue of the *mittimus* from C. county, but by virtue of the *capias* from B. county, and inasmuch as he was not in custody at all when he forfeited his bond, his arrest and detention by virtue of the *capias* had no effect on the validity of the bond or the liability of the sureties. The case would be different if, notwithstanding the

allowance of bail and acceptance of the bond, W. had been held in custody under the *mittimus* from C. county, or if, at the time the bond was forfeited, the State prevented his appearance by detaining him on any charge, or if the sureties had surrendered him, as they could have done notwithstanding his detention on the *capias*.

ERROR from the District Court of Liberty. Tried below before the Hon. EDWIN HOBBY.

A clear statement of all the material facts of this important, interesting and well-contested case will be found in the opinion of the court. The case of which the present is an offshoot had its origin in the assassination of Green Butler, in Galveston county, May 19, 1872. Andrew J. Walker, Amos Walker and Jeff. Black were jointly indicted for the murder, and, Amos Walker effecting his escape, the others were twice jointly tried and convicted in Galveston county; but, on their appeals to the Supreme Court, the convictions were set aside and new trials awarded. See 37 Texas, 366, and 42 Texas, 360. A change of venue was then had from Galveston to Chambers county, and there, in 1875, a severance was had, and Black was convicted. On his appeal to this court that conviction was set aside for reasons disclosed in 1 Texas Ct. App. 368. In 1878, Walker and Black applied to the Hon. H. C. Pedigo, district judge, for the privilege of bail, and from his order overruling their application they appealed to this court, and by its order Walker was admitted to bail in the sum of $15,000, and Black in the sum of $10,000. 3 Texas Ct. App. 668. R. E. Stafford and S. E. Allen, the plaintiffs in error in the present case, became sureties on the bond of Walker. By another change of venue, the case against Walker for the murder of Butler was removed from Chambers to Liberty county, and was pending in the latter county when Walker's bail bond was adjudged forfeited, and the proceedings ensued

which resulted in the present appeal. Those proceedings are clearly disclosed in the opinion, and are therefore unnecessary here.

A motion for rehearing was pressed with great force, but was overruled.

*Willie & Cleveland*, for the plaintiffs in error. When a bail bond is accepted and approved by the proper officer of the State, if the principal therein is not enlarged and set at liberty in pursuance of the bond, but is held in confinement in jail by such officer; or if, having been set at liberty in pursuance of such bail bond, whereby he is put into the custody of his sureties, they are thereafter deprived of the custody of the principal by the State acting through its proper officer, and by its authority the principal is arrested and held in jail, and he escapes therefrom, the bond, in either case, imposed no obligation on the makers, and is not subject to forfeiture for non-appearance of the principal. Rev. Code Crim. Proc. art. 313; 1 Chitty Crim. Law, 92; 2 Hawkins' P. C. ch. 15, sec. 2 *et seq.;* 1 Bacon's Ab. 597; Com. Dig. title "Condition," 4–6; 3 Blackstone, 224, note; *Cooper* v. *The State,* 5 Texas Ct. App. 215; *Peacock* v. *The State,* 44 Texas, 11; *State* v. *Allen,* 2 Humph. 258; *People* v. *Stager,* 10 Wend. 437; *Commonwealth* v. *Bronson,* 14 B. Monroe, 363; 11 Bush, 606; *Commonwealth* v. *Coleman,* 2 Metcalf (Ky.); *People* v. *Bartlett,* 3 Hill, 571; *Canby* v. *Griffin,* 3 Harr. 333; and Mahon's case, 569; *People* v. *Manning,* 8 Cowen, 297.

Upon the case thus stated, what is the law? And at the threshold of this question we are confronted with another, upon the correct solution of which will depend the answer to the one first stated, What is bail? In the language of Chitty (1 Crim. Law, edition of 1836, p. 92), "bail is a delivery or bailment of a person to his sureties

upon their giving, together with himself, sufficient security for his appearance, he being supposed to continue in their friendly custody, instead of going to prison."

Mr. Bishop, in his work on Criminal Procedure, sec. 248, gives this definition: "The verb *to bail*, when applied to persons, is the delivery in legal form of one under arrest to another or others, who thereby become entitled to his custody, and, with him, responsible for his appearance in fulfillment of the purpose of the arrest. *The noun bail* may denote either the process of bailing, or the one or more persons who are thus made the custodians and sureties."

Mr. Webster, in his Unabridged Dictionary, defines the *verb* to bail thus: "To set free, deliver or liberate from arrest and imprisonment, upon security given that the person bailed shall appear and answer in court." The *noun* bail, thus: " The person or persons who procure the release of a prisoner from custody by becoming surety for his appearance in court." " The security given for the release of a prisoner from custody; as the man is out upon bail."

From these elementary definitions it results that when a bail bond is accepted and approved by the proper officer of the State, it is *in fieri*, ambulatory, and dependent for its legal effect upon a condition — that of liberation by the State of the accused thereunder from imprisonment, to be performed by the voluntary act of the State, acting by its proper officer; and hence the provision in our Code of Criminal Procedure, which is to be construed according to the plain import of the language in which it is written. "Art. 313. *In all cases*, when the accused *has given* the required bond, either to the magistrate or officer having him in custody, *he shall at once be set at liberty.*" The signing of the bond in proper form, in proper amount, by the principal with proper sureties, are all acts to be performed upon the part of the obligors, and must neces-

sarily precede the giving of the bond to the officer that he may judge of its sufficiency in these respects, and approve *before* the act of liberation, which is *the condition* which the law fixes upon the obligee, to be performed by the officer having the principal in his custody, and on which depends its validity, its force in law as an executed instrument. This condition — the requirement of art. 313, before cited — complied with, then, and not till then, it becomes an *executed* contract, binding and operative in law, according to its terms, upon the principal and sureties. The liberation from imprisonment by the officer acting for the State is what gives it vitality, because that is *the* consideration which must move *voluntarily* from the obligee, and which alone supports the bond as a contract valid in law. Without this, the bond is *nudum pactum* — though good in form, it lacks the substance — a consideration moving to the principal, to support it and make it a binding contract between the State and the obligors. As between the parties, there is no such thing as *contract* without a consideration, either good or valuable in law.

In this case the *law* fixes the consideration — not in money — but what is even more *valuable in law* as well as fact — liberty. And this liberty must be bestowed by the obligee, willingly by its own act, so that the accused when "set at liberty" shall not be a *fugitive* from the accusation made against him, but thereby put from the prison cell into the "friendly custody" of his sureties, whose custody is a continuation of the original imprisonment, and thus conferring upon them who become his jailors the same right of control over his person which before was exercised by the sheriff. Without this custody, which may be constructively given to the sureties by the voluntary act of the officer in setting the *accused at liberty* (for then they may actually take his person), the bond has not performed its function. Without this is so

done, the anomaly exists, if the bond is upheld, that a legal obligation may be created without consideration.

Chief Justice Savage, in delivering the opinion in the case of the *People* v. *Stager*, 10 Wendell (N. Y.), 43, uses this language: "One object of the recognizance is to obtain the enlargement of the prisoner, *and if after the recognizance* is entered into, he should not be set at liberty, the recognizance ought not to be forfeited." This "setting of the prisoner free" by the willing act of the State, is of the substance — the very essence of the bond — its only legal support; its consideration; impeached by the pleas of the appellants under oath, and by the proof sustained. Can there be a bail bond or any other kind of bond, without a consideration *a quid pro quo?* Can a case be found or an instance cited?

This bail bond must be read in the light of art. 313 of the Code of Procedure, and interpreted by it. The liberation of the principal under it would not have been more incumbent upon the State, if it had been so expressly "nominated in the bond" as a *condition to its operation*, than it was made so by the express provision of the law as enacted in the Code; which furnished the *rule of action* for the officer who took the bail bond, viz.: "In all cases where the accused *has given* the required bond, either to the magistrate or officer, he shall at once set him at liberty."

No matter whether the use which was made of the *capias* was rightful or wrongful, the stubborn fact remains that it did prevent the liberation of Walker from jail. The effect of the second arrest, and retention of Walker in Galveston jail, and his removal therefrom as a prisoner to Brazos county, and confinement in the county jail thereof (as is said by the court in the case of *Medlin et al.* v. *The Commonwealth*, 11 Bush (Ky.), 606), "was to take from the appellants the right and power to exercise that supervision and control over his actions and

movements that they were entitled by law to have and exercise. It is not necessary to inquire whether the second arrest was or was not authorized by law. It is sufficient that the commonwealth, through its judicial and ministerial officers, disregarded the rights secured to King (Walker) and his sureties by the execution of the bail bond, and that *it* undertook to *hold the accused in custody.* Failing in this undertaking, it seems to us clear that it cannot now hold appellants *responsible for that failure.*" And to the same effect is the case of *The Commonwealth* v. *Bronson,* 14 B. Monroe, 361.

Justice Reeves, in delivering the opinion in the case of *Peacock* v. *The State,* 44 Texas, 13, said: "So long as Miller (the accused) was left in the custody of his bail, or was under their control, they were bound for his appearance and liable for the penalty of the bond for his non-appearance, according to the requirements of the bond. Any act done by the State or its officers under lawful authority that would *deprive* the securities of *control* over their *principal* would change their relation to the State, and would thereby release the securities of their obligation." If this be true in a case where the sureties *had* been invested with the custody of the principal by virtue of their bond, and afterward were deprived by the State of that custody, how much more in a case where they had not been so invested with his custody by the State at any time. Again says Justice Reeves: "The issuance of the *capias* for the arrest of Miller (their principal) were acts *inconsistent* with any right in the bail to the *custody* of Miller, and when he was arrested and taken by the sheriff, the *authority* of the bail over him was at an end." To the same effect, in principle, is the case of *Cooper* v. *The State,* 5 Texas Ct. App., in which Presiding Judge Ector quotes approvingly the case of *Peacock* v. *The State.* And be it here said that in both of these cases the sureties had been in the first instance invested with the custody

and control of their principal, who was, when the bail bond was given, "set at liberty," but afterward they were *deprived* by *second arrest* of that custody, and the fact of such deprivation, or the legal consequences flowing from it, is not made by the court, in either case quoted, *to depend* upon the circumstance that it was for the *same* or a *different* offense, nor could it be on principle.

But, assuming for argument's sake, that the act of the State, by its agents, in causing the issuance of the *capias* from Brazos county and its lodgment with the sheriff of Galveston county would excuse in law, or render impossible, the performance of the condition on her part, to "set the accused at liberty," upon what principle of law or ethics can the State claim the forfeiture of a bond which was given, having for its object the performance of the act which by her own voluntary conduct she had made it impossible or illegal for the officer to do?

It is an elementary principle of law that, where the performance of the condition upon which the obligation of a bond depends has been rendered impossible by the law or the obligee, such obligee can claim *no benefit* under it. Bacon's Abridgment, title "Condition."

In the case of *Taylor* v. *Taintor*, 16 Wallace, 370, the court held "that if the impossibility of liberating the accused be created by the State, then, *ipso facto*, any bond given will be *nudum pactum*, and of no binding force."

Did Walker escape from the State? Or, did he escape from his sureties? The State had him, and refused to deliver him to liberty or to his sureties, but retained him at all times till he got out of her jail, where she had confined him for safe-keeping, and whose officer alone was charged with the duty and responsibility of keeping him. Art. 280, Code Crim. Proc.: "It is the duty of every sheriff to keep safely a person committed to his custody." Are these appellants to be chargeable with the fault or negligence of the jailer of the State, or the insecurity, it may

be, of the locks or bolts, or walls of its prison? The obligation which they proposed to the State to take upon themselves by their bond was not that, but it was that, if he were set at liberty by the voluntary act of the State, and thus placed in their custody instead of that of the State's jailers, they would, in a penalty of $15,000, be bound for his appearance to answer to that accusation; and who will say that the principal would not so have done if the only boon which such bond could have conferred upon him had been bestowed — that of freedom? If liberated, they were willing to trust his honor for that. But more than that, if they had doubted him at any time, as was said by Justice Swayne in the case of *Taylor* v. *Taintor*, 16 Wallace, 371, *they* would have "had the right to seize him and deliver him up in their discharge; or, if that could not be done at once, *they* might imprison him until it could be done. If necessary, they might break and enter his house without process, for they would need none. This right is likened to the arrest by the sheriff of an escaping prisoner." Or, as was said by Justice Dillon in the *United States* v. *Van Fossen et al.* 1 Dillon, 410, a case in which, upon the recognizance being taken, the principal was set at liberty, "the principal was delivered into, what Blackstone calls, 'the friendly custody' of his sureties, instead of being committed to prison. 4 Blackstone's Com. 301. They thenceforth became invested with full authority *over his person*. They might take him at *any time* or *place* in the State, or beyond. *They* are his jailers; or, as Justice Wheeler puts it in *Gay* v. *The State*, 20 Texas, 507, they are his '*manucaptors*, being his jailers, and he, constantly, in a state of *commitment*,' not to the county jail, but, as Blackstone says, to 'their friendly custody.'"

In every case cited by counsel for appellee, and we have examined all, the accused was set at liberty upon the giving of the bond. No case has been cited, nor can be, to

support the doctrine that, upon the giving of a bail bond and its acceptance and approval by the officer, it becomes operative, and that, to give it effect, it is not necessary that the principal should be liberated at all.

"The object of a recognizance is not to enrich the treasury (as was said by that great jurist, Chief Justice Marshall, in the case of *United States* v. *Feely*, 1 Brock. 255), but to combine the administration of criminal justice with the convenience of a person accused, but not found guilty." When guided by such a light, the judicial conscience cannot materially err.

These appellants are blameless, and if Andrew Walker was not content "to lie in cold obstruction and to rot" in jail, from which the $15,000 bond of these appellants could not extricate him, then let him who would not have done likewise cast a stone at him.

*Thomas Ball*, Assistant Attorney General, *M. C. McLemore*, and *Davis & Sayles*, for the State. If the principal in a bail bond be subsequently arrested by the State for an offense different from the one for which such bond was given, and such prisoner escape from the second arrest, and without excuse fail to appear in pursuance to the terms of the bail bond, then the sureties on such bond are liable under the bond to the extent of the penalty.

After Walker, the principal in the bail bond in question, had executed the bond, he was arrested by the State for an offense other than the one for which the bond had been given, and thereafter Walker escaped from the arrest, and at the time he was called to answer in pursuance to the terms of his bond he was at large, but failed to appear to answer as the bond required; and no excuse is given for such failure, except the fact of the subsequent arrest from which he escaped before he was called to answer. Bill of Rights of Texas, sec. 11; Rev. Stat. Texas, C. C. P. sec.

462; *Wheeler* v. *The State*, 38 Texas, 173; *People* v. *Bartlett*, 3 Hill, 571; *Alquire* v. *Commonwealth*, 3 B. Monroe, 349; *State* v. *Merrihew*, 47 Iowa, 112; *Steelman* v. *Mattix*, 9 Vroom (N. J.), 247; Coke-Littleton, 206; Bacon's Abridgment, " Condition;" Viner's Abridgment, " Conditions;" Hurlstone on Bonds, 48; *Ingram* v. *The State*, 25 Ala. 17; *Devine* v. *The State*, 5 Sneed, 623; *Belding* v. *The State*, 25 Ark. 315; *Burton* v. *The State*, 24 Texas, 250.

The State by its duly authorized officer having accepted and approved the bond in controversy, and the principal in the bond having delivered the same to the State, and the State having acted on the bond (with the consent of the principal) as good and sufficient for the purposes contemplated by it, and the principal having enlarged himself by his own faulty act, he and his sureties are estopped to deny the sufficient execution and delivery of the bond, and its validity for all purposes.

The bond in controversy, after having been signed, was delivered to the State through its duly authorized officer, and by said officer accepted and approved; and thereafter said principal and his sureties allowed the bond to remain in the proper office to which it was sent by the proper officer who received it, until after said principal was enlarged by his own act.

After the acceptance and approval of the bond, and release of principal from the custody of the law by the force of the bond given, the principal was taken under a new process for a different offense, and from this subsequent arrest the principal sought to discharge himself by *habeas corpus*, and failing in this, released himself by escaping from his confinement under the second arrest. Herman on Estoppels, secs. 4–9, and sec. 337; *Wheeler* v. *The State*, 38 Texas, 173; *Taylor* v. *Taintor*, 16 Wallace, 370.

The principal in the bond, after its execution and delivery, having been arrested and enlarged by his own faulty conduct, cannot set up such arrest to invalidate the

bond given.   *U. S.* v. *Van Fossen*, 1 Dillon, 409; *Taylor*
v. *Taintor*, 16 Wallace, 370.

The principal in the bond not having appeared for trial
before judgment final on the bond, no defense can be made
except to the validity of the bond as a binding obligation.
Code. Crim. Proc. art. 452 (1).

*Horace Chilton*, Assistant Attorney General, filed an
able brief and argument in opposition to the motion for
a rehearing.

HURT, J.   One Andrew J. Walker was indicted in Gal-
veston county for the murder of Green Butler, at the
May term, 1872, of the Criminal District Court of the
county of Galveston.   The case was transferred, first to
the District Court of Chambers, and from that court to
the District Court of Liberty county.   While the cause
was pending in the District Court of Chambers county,
Walker applied for bail, and it being denied, he applied to
the Court of Appeals, and, upon the hearing, this court
reversed the judgment of the district judge, and granted
him bail in the sum of $15,000.   On the seventh day of
September, 1878, the District Court of Chambers county
ordered that the said Walker be committed, for safe keep-
ing, into the custody of C. Jordan, sheriff of Galveston
county, which was accordingly done.

Walker being in the custody of the sheriff of Gal-
veston county, the mandate of the Court of Appeals was
directed to him; and by this mandate he was required,
"upon the presentation of a good and sufficient bail bond
in the sum of $15,000, with good security, conditioned as
the law requires, for the appearance of the said Andrew
J. Walker at the proper court to answer the charge pre-
ferred against him by indictment for murder, to release
the said Walker from custody."   He (Jordan) was further
instructed to be satisfied with the solvency and sufficiency
of said bond, and to indorse his approval thereof thereon,

and transmit it to the clerk of the District Court of Chambers county, to be there filed in the papers of the case, etc.

The said Andrew J. Walker presented to Jordan a bond with the appellants as his sureties in the amount and in proper form; which was accepted, approved and forwarded to the clerk of the District Court of Chambers county, and by him filed with the papers in the case. Walker was in jail at the time the bond was accepted and approved by the sheriff, Jordan, and was not liberated in fact by him, for the reason that the sheriff, Jordan, had in his possession a *capias* for the arrest of Walker upon a charge of murder in Brazos county. Having accepted and approved the bond in this case, to wit: *The State* v. *Walker*, charged with the murder of Green Butler, he, while Walker was yet in his custody, arrested him upon the *capias* from Brazos. The bond in the Butler case was delivered to the sheriff on the 14th day of November, 1878. The sheriff held Walker in his custody, in the jail at Galveston, until he was turned over to the sheriff of Brazos county, which occurred on the same day, to wit: the 14th day of November, 1878. From thence he was taken by the sheriff of Brazos, and placed in the jail of that county; from which he made his escape on the 11th day of May, 1879.

At the September term, 1879, of the District Court of Liberty county, the case of *The State* v. *Walker*, charged with the murder of Green Butler, was regularly reached and called for trial. Walker not appearing, a judgment *nisi* was rendered against him and his sureties on the bond, for the amount of the penalty of the bond. At the March term, 1880, the appellants, Stafford and Allen, appeared, and for answer to the *scire facias* pleaded in substance and effect: "That the bond was inoperative and not binding, because the principal therein, Walker, had not been released thereunder from custody;

that he had never been enlarged or set at liberty, nor placed in the custody of his sureties by virtue of said bond; that at the time of its delivery to, and approval by, the sheriff, he was held, and thereafter was continuously held in custody — confined in jail — and while so held by the State of Texas, acting by its proper officers, on the 11th day of May, 1879, he broke jail and made his escape; for which the appellants were not liable." At the September term, 1880, the District Court, upon the law and facts, gave judgment final against the appellants and overruled a motion for a new trial; from which judgment the appellants prosecute their writ of error to this court.

If the answer of appellants presented a good and valid defense to the action, the evidence fully sustaining the same, there was error in the court below in rendering judgment for the State. The learned counsel for appellants, in order to demonstrate the error of the court, formulates the issue into this proposition: "When a bail bond is accepted and approved by the proper officer of the State, if the principal therein is not *enlarged* and set at liberty in pursuance of the bond, but is held in confinement in jail by such officer, or if, having been set at liberty in pursuance of such bail bond, whereby he is put into the custody of his sureties, they are thereafter deprived of the custody of the principal by the State, acting through its proper officers, and he escapes therefrom, the bond, in either case, imposes no obligation on the makers, and is not subject to forfeiture for non-appearance of the principal."

This is a very ingenious and plausible proposition. It stands, apparently, remarkably near the proposition made by the facts in this case; but upon a closer view it will be seen that there is quite a space between them. This proposition approaches very nearly the correct legal proposition. If in the first paragraph it had contained or alleged the fact that the principal was held *by virtue* of the

*capias* or *mittimus* under the *same charge*, or if it had stated in the second clause that the principal was held by the State *at the time* of the forfeiture, we would not be disposed to question the conclusion that the liability of the sureties was discharged.

In this case, however, neither of these facts enter into its make-up. The bond was taken, approved and sent to the clerk of the proper court by the sheriff; and he states that he held the principal, not by virtue of the *mittimus*, but the *capias* from Brazos. At the time of the forfeiture the principal was not held by the State at all; he was perfectly free, and there was no obstacle in the way of his appearance, from any cause whatever. If the principal had been held in custody by virtue of the *mittimus* from Chambers county, or if released and arrested again on the *same charge* by the State or its authority, these acts would be inconsistent with and a repudiation of the bond. Again, if, at the time of the forfeiture, the principal was in the custody of the State upon the same or any other charge, these facts would constitute a good answer to that forfeiture *thus* taken while the principal was *held by the State.*

Counsel for appellant in argument concede that if there had been but a moment of actual liberty given to the principal before the second arrest, the sureties' liability would have attached. Upon what principle? One of consideration? Suppose the State had held the principal to within a day of the trial — say six months — and discharged him from custody, if this is a question of consideration, should there not have been an apportionment? The learned counsel for appellant concede in argument that the bond would have been operative if the principal had been liberated for the shortest space of time, though he were again arrested and deprived of his liberty by the State, on another charge, up to the time of his escape. If, then, the State could have legally, without discharge

of sureties, arrested the principal upon another charge, immediately after their liberating him, the principle must be nice indeed which operates a denial of the State the right to arrest without first liberating the principal. This distinction is so nice that to give it effect there should be a clear and satisfactory reason. The denial of this principle operates not the slightest injury to principal or sureties. The bond was accepted and approved by the proper officer, after having been presented for that purpose, or with the intention that it should be accepted by the officer; and, if the sureties were not willing for it to operate and be in force, they had the right to surrender their principal, though in custody, at any time *before the forfeiture.*

Let us view this question from another standpoint. The position assumed by appellants is, that, as their principal was arrested by the officer before actual liberty was given under the bond, and the principal escaped, therefore they are not liable. Now suppose the second arrest had been made upon a charge of gaming, and an escape had occurred? If correct, the principle contended for would apply; and the sureties in a murder case, when the principal was held in fact for the misdemeanor, would be released. If the escape was through the negligence of the officer, would he, under the Penal Code, be answerable for an escape in the felony or the misdemeanor? The facts and circumstances attending the execution of this bond were calculated to lead to the belief that, as far as regards the Green Butler case, the execution of the bond was full and complete; hence the officer would not be held to that degree of care in the custody of Walker, in case of arrest for misdemeanor, as if no bond had been given. We therefore conclude that when the bond was presented by appellants to the sheriff, and accepted, approved and forwarded to the clerk of the proper District Court, it became operative, with full and complete bind-

ing effect, upon the sureties. Nor was it necessary, to give it effect, that the principal should have been liberated at all. All that was required to give it force and effect was, that the minds of the parties met on and agreed to its presentation to, and acceptance by, the officer, and that it *was* so presented to and accepted by the officer.

Having been thus presented and accepted, to release the sureties of liability the State must re-arrest the principal upon the same charge, thereby repudiating the bond,— the contract,— or the State must have the custody of the principal upon the same or any other charge, at the *time* the forfeiture was taken, or so near thereto as to prevent the attendance of the principal.

In this case it is not possible to perceive in what manner the State contributed to the failure to attend by the principal. At the time of the forfeiture their principal was at large with perfect freedom to attend and answer the charge, as he was required by his bond. Being at liberty to attend the trial, we are at a loss to understand how the failure to give him actual freedom could have the slightest tendency to prevent his attending.

We have examined with care and great interest the *very* able briefs of the appellant and the State, and in these will be found a clear and concise statement of the question at issue, with all the authorities that we have been able to find, after a most thorough investigation. These briefs contain such a clear presentation of the point in issue that we suggest that the student of law will derive more satisfaction and information from them than by reading this opinion. After having given the record a most careful examination, we can find no error for which the judgment should be reversed. The judgment is affirmed.

*Affirmed.*